James **BROOKS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–93–00018–CR.

Court of Appeals of Texas, Tyler.

Feb. 28, 1995.

Kenneth Nash, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

RAMEY, Chief Justice.

The Appellant, James Brooks ("Brooks"), appeals his conviction for engaging in organized criminal activity. Following a plea of "not guilty," Brooks was tried before a jury, which found him guilty of the offense charged and assessed his punishment at life imprisonment and a ten thousand dollar fine. We will affirm the conviction.

Brooks' first point of error asserts that the evidence was insufficient to support the verdict. The standard for reviewing the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.App.1989).

One commits the offense of engaging in an organized criminal activity when, with intent to establish, maintain, or participate in a combination, he commits, or conspires to commit, one of a number of enumerated offenses, among them, the unlawful delivery of a controlled substance. Section 71.02, TEX.PENAL CODE. A combination is defined as three or more persons who collaborate in carrying on criminal activities. Section 71.01(a), TEX.PENAL CODE. When, as here, the indictment alleges a conspiracy to commit the enumerated offense,

> [g]uilt requires two ingredients: (1) intent to participate in a criminal combination, and (2) the defendant's performing some act, not necessarily criminal in itself, in furtherance of the agreement.

*Barber v. State*, 764 S.W.2d 232, 235 (Tex.Cr. App.1988). We thus look, first, at the evidence for the combination, and, thereafter, at the evidence of Brooks' participation through the commission of an overt act as alleged.

The State's evidence showed the existence of an extensive "market" in cocaine, shown by a pattern of individual drug transactions evidencing tacit consent and agreement among the various sellers. The existence of this criminal collaboration could be inferred from the cooperative activity involved in selling at a common time and place, with a common method, as well as in selling for others. There was evidence that there was a common "burn barrel", into which contraband could be quickly thrown and destroyed in the event of a raid, as well as watches for the police, and signals to be given in the event of their approach. All of this evidence was sufficient to allow a jury to infer, not simply discreet, unrelated drug transactions, but a common purpose among the sellers to observe certain "conventions" among themselves to more profitably distribute crack cocaine.

The primary evidence for this state of affairs was a videotape made clandestinely by local law enforcement officials, with testimony by Officer Gerald Hairford that the various defendants' actions on the tape, including those of Brooks, were, in his professional opinion, consistent with criminal behavior, drug transactions. Rosalind Guster, testifying under a grant of immunity, gave evidence regarding her own sales and purchases of drugs at this location, and testified that, on the days that the videotaping occurred, she had seen Brooks selling drugs, both on his own and on behalf of others.

Of the thirty nine overt acts alleged in the indictment, one referred to Brooks, his approach to a car on December 15, 1990. With respect to this overt act, the evidence included a videotape of Brooks approaching this car at 4:46 p.m. and selling what appeared to Officer Hairford to be a rock or rocks of crack cocaine to the driver, whom Officer Hairford identified as Sherry Bircher.

Reviewing this evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt from all this evidence that a criminal combination existed here to distribute crack cocaine, that Brooks commit-

ted the overt act alleged in the indictment, and that such overt act, in its context, evidenced Brooks' intent to participate in the criminal combination. Brooks' first point of error is overruled.

In his second point of error Brooks contends that the trial court erred in refusing to dismiss the array because of the failure of the State to offer racially neutral reasons for its peremptory strikes, as required by *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] He specifically complained of two discrepancies in the State's explanation of its strikes:

1) The State claimed that it struck all jurors who asserted that rehabilitation was the object of punishment, but failed to strike juror number 69, Samuel Thomas Crawford, a white male, who also answered "rehabilitation" to such question.

2) The State claimed that it struck all veniremen with a criminal record or who had relatives with a criminal record, but failed to strike numerous white jurors who met such criterion.

After a hearing, the trial judge found that the State had not exercised its strikes in a racially-discriminatory manner.

Our review of such finding is by a "clearly erroneous" standard; we are not to set the trial judge's finding aside unless the record leaves us with a definite and firm conviction that the trial judge was in error. *Wright v. State,* 832 S.W.2d 601, 604 (Tex.Cr.App.1992).

With respect to the disputed claim that the State struck all persons answering "rehabilitation," the record indicates that the prosecutor, Robert Perkins ("Perkins"), was in error when he testified that juror number 69 had not identified rehabilitation as the main purpose of punishment. But his testimony established that, with the exception of juror 69, all persons, of whatever race, who answered "rehabilitation," were struck by the State, unless they were excused for cause. "A venireperson's views regarding the importance of rehabilitation may be a race-neutral reason for the use of a peremptory challenge." *Thornton v. State,* —— S.W.2d ——, ——, 1994 WL 718990 (Tex.App.—Tyler 1994, no writ). Where, as here, counsel is testifying with respect to a jury array of this size, and where, with the exception of one error, the facts bear out the State's assertion that it struck all veniremen that answered "rehabilitation," the trial judge was not clearly wrong in concluding that the State's failure to strike juror number 69 was the result of inadvertence, not race-based animosity.[2]

Brooks also asserts that the State was arbitrary and inconsistent in striking those related to, or friends with, persons with criminal histories. But the State articulated a more complex rationale for such strikes than that attributed to it by Brooks. According to Perkins, the State struck those with criminal records, or those whose addresses coincided with others with criminal records. The seriousness of the offense and the proximity of relationship to the prospective juror were factors taken into account, as well as candor in admitting or volunteering such information. Additionally, some whom the State might have stricken under this criterion were left on the jury because of assertions that the persons charged were treated fairly, or that the venireman tended nevertheless to believe the testimony of police.

The prosecution is not required by *Batson* to mechanically exclude every member of the panel who might possess a characteristic which, standing alone, would lead the State to exercise a peremptory strike; "the decision whether to strike a venireman hinges upon the interplay of various factors...." *U.S. v. Lewis,* 837 F.2d 415, 417, fn.5 (9th Cir.1988). Our review of the record satisfies us that the trial judge was not clearly wrong in concluding that the State's explanations for its peremptory strikes were based, not on

---

1. Brooks is an African–American, and the State exercised its peremptory challenges against nine of the eighteen African–American in the strike zone, producing a jury with three African–Americans. The trial judge found that this pattern of strikes arguably called for a *Batson* hearing to determine whether the State's strikes were exercised for non-racial reasons.

2. We note that one defense counsel made a similar mistake of incorrectly attributing a particular answer on this issue to one of the jurors.

racial criteria, but on acceptable grounds related to past encounters with the law by the prospective jurors and by those closely related to them. Brooks' second point of error is overruled.

 In his third point of error Brooks asserts that the trial court erred in denying his motion for a mistrial when the State's attorney allegedly argued a shift in the burden of proof in his opening statement. The objectionable remarks by Perkins were as follows:

> Ladies and Gentlemen, I'm not going to take up a whole lot of your time talking about the different aspects of the case, but I do want to call this to your attention before I stop. I also expect that the defense in this case may be, "I was only out there for a minute. I was—only did one thing."

Brooks' counsel objected to these remarks on the basis that they constituted speculation about the defense to be offered; the objection was sustained. Another defendant's counsel then asked that the jury be instructed to disregard Perkins' statement, and the court so instructed the jury. Brooks' counsel then elaborated on his objection, asserting that the effect of the remark was to transfer the burden of proving innocence to the defense. Though the judge did not sustain this objection, she reiterated to the jury that the entire burden of proof rests upon the State and never shifts to the defense. Brooks' counsel then moved for a mistrial, which was denied.

An instruction to disregard will ordinarily cure improper argument, unless the objectionable statement is so inflammatory that the prejudicial effect cannot reasonably be removed by the curative instruction. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Cr.App.1994). And a later instruction by the court will usually render harmless any misstatement of the law in opening argument. *Hart v. State*, 818 S.W.2d 430, 438 (Tex. App.—Corpus Christi 1991, no pet.). Here, even if the prosecution's attempted anticipation of the defense did operate to suggest an improper burden of proof, the trial court cured such error with its prompt instructions to the jury. It was not error to fail to grant the requested mistrial. Brooks' third point of error is overruled.

In his fourth point of error Brooks claims that the trial judge erred in refusing to hear evidence on Appellant's motion for new trial. Brooks did indeed allege jury misconduct in his motion for new trial, and such allegation was supported by an affidavit claiming that certain jurors were overheard discussing the case prior to the trial's conclusion. The motion failed, however, to include a request for a hearing on this allegation; the trial court is not required to convene a hearing on a motion for new trial absent a request by the movant for such hearing. *Martin v. State*, 823 S.W.2d 395, 397 (Tex. App.—Texarkana 1992, pet. ref'd). Brooks' fourth point of error is therefore overruled.

The judgment of the court below is affirmed.