Abbott-CJ v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-172-CR

     CLOISE JAMES ABBOTT,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 292nd District Court
Dallas County, Texas
Trial Court # F94-50621-WV
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Abbott appeals from his conviction for delivery of cocaine, less than 28 grams,
(enhanced by one prior felony conviction) for which he was sentenced to 20 years in the Texas
Department of Criminal Justice, Institutional Division.
      Two undercover narcotic officers testified that Appellant assisted them in the purchase of
cocaine from another individual. Appellant denied that he did so. Appellant was tried under the
law of parties. The jury convicted him, and he pled "true" to the alleged prior felony conviction. 
Appellant elected to have the judge assess punishment. The judge sentenced him to 20 years in
prison.
      Appellant appeals on three points of error.
      Point one: "The evidence is insufficient to support the conviction for the offense charged."
      Officer O'Donnell testified that on February 4, 1994, he and officers Castillo and Underwood
were working undercover, i.e., they were not in uniform, were not in a police car, and were
dressed in old work clothes. He testified they were cruising in an area where their supervisor,
Sergeant Misak, told them that narcotics activity was being conducted; that they saw individuals
standing in the 5300 block of Liveoak; that he (O'Donnell) cried out, "Where is the rock?"; that
Appellant waived for them to stop and asked what they were looking for; that he replied, "a couple
of dimes," (a dime is a $10 rock of cocaine). Appellant said he did not have any but could take
them where they could get some. Appellant got in the car and directed the officers to 4815
Gaston. O'Donnell and Appellant exited the car and went into a breezeway where Appellant
approached a young black male and said that O'Donnell needed two dimes. The younger man
took a baggie from his pocket which contained several smaller plastic bags and handed O'Donnell
two of the small bags. O'Donnell paid him with a marked $20 bill. It appeared to O'Donnell that
Appellant and the young man knew each other; and the young male complied immediately when
Appellant said O'Donnell needed two dimes. O'Donnell and Appellant returned to the officers'
car; O'Donnell gave Appellant $5; and Appellant walked across the street. The officers radioed
Sergeant Misal, who was nearby, that they had made a purchase and gave a detailed description
of Appellant and the male who made the delivery. Within five minutes Appellant was arrested. 
The other male ran and was not apprehended.
      Officer Underwood testified substantially as did Officer O'Donnell. Sergeant Misak testified
he arrested Appellant and that Officers O'Donnell and Underwood confirmed that it was Appellant
that assisted them in the purchase of the two bags of cocaine.
      Appellant testified that he lives on the streets, that he cleans windows for a living; that the
officers approached him asking if he knew where they could get drugs; that he told them, "No";
that he asked if they would give him a ride to Gaston; that he rode with them to Gaston; that they
gave him a $5 bill; that he exited the car and went to a nearby apartment's restroom; that when
he came out he was arrested; and that he did not assist anyone to sell drugs.
      In reviewing the sufficiency of the evidence, this court must determine whether, considering
the evidence in the light most favorable to the verdict, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319; Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Inconsistencies in the
testimony are resolved in favor of the verdict. Johnson v. State, 815 S.W.2d 707, 712 (Tex.
Crim. App. 1991). The jury, as the trier of fact, is the exclusive judge of the credibility of the
witnesses and of the weight to be given their testimony. Bonham v. State, 680 S.W.2d 815, 819
(Tex. Crim. App. 1984). Under the Jackson test any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Point one is overruled.
      Point two: "Batson error was committed during the jury selection."
      Specifically Appellant asserts that Juror No. 2, Ms. Moss, a black woman, was struck by the
State as peremptory challenge because of her race.
      During voir dire the prosecutor asked the panel if anyone personally, or a close friend or
relative, had been charged or convicted of any type of offense. There was no response from Ms.
Moss who was on the first row. The prosecutor then asked the question to the first row and Ms.
Moss made no response. The prosecutor then went to the second row, then returned to the first
row again with the question; again Ms. Moss Made no response. The prosecutor then asked the
third row the question, returned to the first row again, and asked the question. Again there was
no response from Ms. Moss. 
      The State struck Ms. Moss as a peremptory strike. After the jury was selected Appellant
made a motion that Juror No. 2, Ms. Moss, "was excluded because of race and for no other
reason"
      The State responded that Ms. Moss was struck because she was less than forthcoming when
asked about being charged with, convicted, or arrested for any type of crime as to her, a close
friend or relative; and that it is the State's belief, and [this] has been double checked by our
investigator, that her husband has an extensive felony background. The State further stated it was
concerned about and struck people who were less than forthright about anything other than traffic-ticket offenses. The court found the State's strike was race neutral.
      A Batson motion is one that complains the State used a peremptory challenge against a
venireperson for a constitutionally impermissible reason such as race. Batson v. Kentucky, 476
U.S. 79 (1986). When reviewing a Batson claim, a reviewing court is to examine the record in
the light most favorable to the trial court's ruling. Keeton v. State, 749 S.W.2d 861, 870 (Tex.
Crim. App. 1988). A trial court's ruling will be reversed only when the ruling is clearly
erroneous. Whitsey v. State, 796 S.W.2d 707, 726 (Tex. Crim. App. 1990). The State's reason
for striking a potential juror need not rise to the level of a challenge for cause; it need only be race
neutral. Tomkins v. State, 774 S.W.2d 195, 200 (Tex. Crim. App. 1987), aff'd 490 U.S. 1754
(1989).
       Lack of candor in admitting or volunteering information that a juror or close relative has a
criminal record is a factor taken into account in determining whether the State's reason for striking
was a race neutral. Brooks v. State,,, 894 S.W.2d 843, 846 (Tex. App.—Tyler 1995, no pet.).
      When the prosecutor provides a race-neutral explanation, the burden shifts back to the
defendant to rebut the prosecutor's explanation or to show that the explanation was merely a sham
or pretext. Williams. V. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991), cert. denied, 501
U.S. 1239.
      Appellant here did not attempt to rebut the State's explanation or show that it was a sham. 
Point two is overruled.
      Point three: "The prosecutor erred by arguing to the jury that the credibility of the appellant
could be impeached with an offense that was not a felony or one involving moral turpitude."
      Appellant testified that he had been convicted of possession of cocaine and sentenced to three
years for that offense; that he had been convicted of forgery and given three years for that offense;
and that he had been convicted of a terroristic threat to his cousin.
      Specifically, Appellant complains of the State's closing argument to the jury, viz:
                  He is a convicted drug possessor, he is a convicted thief, and oh, he almost
forgot to tell you about his conviction for a terroristic threat that conveniently
slipped his mind.
                  The defense attorney wants you to forget about all of that, don't use that
against him. But you are entitled to use that. You can go back there and say,
"What type of character are we listening to? What type of man do we have
here?" We have a drug user who's been convicted and we have a thief, and we
have someone who makes terroristic threats on people, and you can use that to
judge his credibility.
                  [DEFENSE COUNSEL:] Your Honor, a terroristic threat is not a crime
of moral turpitude to use against him at this time.
                  THE COURT: Overruled, Counsel.
      Appellant contends that because making a terroristic threat to another person is a misdemeanor
and does not involve moral turpitude, the argument was improper to be considered in judging
Appellant's credibility.
      Appellant had originally testified that the only misdemeanor offense he had been convicted
of was sleeping in public and he did not "count that kind of stuff." He later admitted he had been
convicted of terroristic threats.
      It was a reasonable deduction that if Appellant had lied earlier about his conviction for a
terroristic threat that such could be used to judge his credibility.
      The argument was permissible both as a summation of the evidence and as a reasonable
deduction from the evidence. Drew v. State, 743 S.W.2d 207, 221 (Tex. Crim. App. 1987).
      Point three is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed October 2, 1996
Do not publish