TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00308-CR







Bobby Walker, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0960207, HONORABLE TOM BLACKWELL, JUDGE PRESIDING






 This is an appeal from a conviction for engaging in organized criminal activity by committing
aggravated assault as a member of a combination. See Tex. Penal Code Ann. § 71.02(a)(1) (West Supp.
1997). The jury found appellant, Bobby Walker, guilty as charged in Count II of the indictment and further
found that in the commission of the offense he used a deadly weapon, to wit: his foot. Thereafter, the trial
court assessed punishment at thirty-five years' imprisonment.

 Appellant advances three points of error. First, appellant contends that the evidence is
insufficient to show that he used a deadly weapon during the commission of the offense. Second, he
challenges the sufficiency of the evidence to show that he acted with intent to establish, maintain or
participate in a combination. He divides the second point of error into factual and legal sufficiency
questions which we will consider separately. (1)
 Third, appellant urges that the trial court erred in admitting
the testimony of a probation officer that a co-defendant, Michael Merida, had stated that he (Merida) was
a member of the "Crips," a criminal street gang.


Facts


 On the evening of September 5, 1995, an altercation began between DeQuincy Smith and
several Hispanic men at the Step-In Grocery at 7309 Cameron Road in Austin. The cause of the
altercation is not clear though there was some indication that Smith claimed he was "jumped" for the liquor
he had. Under any circumstances, Smith went to a nearby apartment complex and informed his friends and
others there of the altercation. Approximately six to fifteen individuals including appellant returned with
Smith to the convenience store where the fighting resumed. The Hispanic men, seeing that they were
outnumbered, all tried to flee. One of their number, later identified as Solomon Eloisa, was tripped by
Jason Pope as he tried to get away. He was set upon by Smith and others and severely beaten. By his
own admission, appellant was involved in the beating but claims the evidence to be insufficient to sustain
the jury's verdict.

 About 9:15 p.m. on the date in question, Austin Police Officer Russell Overheu responded
to a report of fighting at the convenience store. Upon arrival, he and officer Butler found no fight in
progress and started to leave when his flashlight revealed Eloisa lying in the dark area of the store's parking
lot. Eloisa had massive facial cuts and a large amount of blood on his face. EMS was summoned. The
store clerk informed Overheu that three of the assailants were across the street, but the trio fled when
approached. Jason Pope and Michael Merida were apprehended. Merida's knuckles were scraped. He
told Officer Overheu that he had scraped his hand on a fence but he could not identify the fence.

 A few days later, Officer Overheu found Merida and appellant on the store's parking lot. 
Knowing that there was an outstanding warrant for Merida for the offense involved, the officer arrested
Merida. Having previously handled appellant, Overheu asked him if he was staying out of trouble. 
Appellant assured the officer that he was and denied any involvement in the instant offense, claiming that
he was across the street and only observed the fight. Before Overheu left the parking lot, another officer
arrived and arrested appellant on a warrant for the instant offense.

 Officer Ralph Tijerina testified that as a result of his investigation an arrest warrant was
issued for appellant. After his arrest, appellant made a written statement. The statement of the 20-year-old appellant was introduced into evidence. In the statement, appellant related that prior to the incident in
question he was with friends at the Coronado Apartments when someone said there was a fight at the
convenience store and "they" were going to "jump on Q-Dog Quincy" and everyone ran to the store. 
Appellant stated that he saw at the store six or seven "Mexican dudes" cussing at Q-Dog, one with a stick,
another with an axe handle, and a third with part of a fence. The statement then in pertinent part revealed:


. . . we started throwing bottles . . . the Mexicans started running . . . I waited a little while,
then that's when I saw they had one caught. They were all kicking him. . . . I kicked him
two times in the ribs. I then backed up. . . Then I tried to stop them. . . . I used to be
with the Crips starting when I moved back to the St. Johns area . . . I used to be . . . St.
Johns Crips . . . I stopped hanging out with them because they were getting in trouble and
doing all kinds of stupid . . .



 Jason Pope, age 15, testified that on the date in question he and a friend had been smoking
"weed" and drinking liquor when another friend, DeQuincy Smith, appeared and told them he had been
"jumped" at the store by some men who had taken the liquor he had purchased. Pope then described the
ensuing fight in which he had tripped Eloisa and that "a whole bunch of people" including appellant had
stomped on Eloisa. He stated appellant had jumped up and down on Eloisa's head "at least more than 15
times" and demonstrated to the jury how appellant held on to a railing while doing so. He saw appellant
search inside Eloisa's pocket. Pope agreed that the group who assaulted Eloisa was acting together "as
a team."

 Clarence Smith, younger brother of DeQuincy, testified that he saw appellant "kicking the
dude in the head, jumping off the rail" while the victim was screaming. He denied that appellant was ever
trying to help the victim. He further testified that his brother, Michael Merida, and appellant were "Crips."

 Testifying in his own behalf, appellant admitted he joined in the attack on Eloisa but kicked
him twice and backed up. He denied that he stomped on Eloisa's head. Appellant did see some
unidentified person holding onto the rail who kept kicking Eloisa although appellant said, "That's enough."

 Dr. Philips Ralidis treated Eloisa on the night of the assault and found that Eloisa was unable
to tell him what had happened. After several neurological tests, a CAT scan revealed that Eloisa had a
large left-sided subdural hematoma with some degree of shift across the midline caused by a rupture of one
of the veins that help drain blood from the brain. A ruptured vein or veins result in bleeding below the dura
which compresses the brain. Brain surgery was performed on Eloisa to evacuate the blood. The doctor
testified that a subdural hematoma can result in death and neurological disability and is generally caused by
a significant blow to the head.

 Eloisa testified that prior to his injury he was in good health and was a construction worker;
that he had no memory of what occurred on September 5, 1995; that he now lived in Mexico and that he
was unable to care for himself. He explained that he was often dizzy, had double vision, was unable to
stand or walk without assistance, and could not bathe himself.


Legal Sufficiency


 The standard for reviewing the legal sufficiency of the evidence is whether, viewing the
evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond
a reasonable doubt the essential elements of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990); Flores v. State, 895 S.W.2d
435, 445 (Tex. App.--San Antonio 1995, no pet.).

 The standard of review is the same in both direct and circumstantial evidence cases. Green
v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1020 (1993); Geesa
v. State, 820 SW.2d 154, 155 (Tex. Crim. App. 1990). In our review of the legal sufficiency of the
evidence, we must consider all the evidence which the jury was permitted, properly or improperly, to
consider. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, ___U.S.__,
114 S. Ct. 1579; Rodriquez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). In addition, the
sufficiency of the evidence must be measured against the charge that was given to the jury. Jones v. State,
815 S.W.2d 667, 668 (Tex. Crim. App. 1991). The instant jury charge tracked the pertinent allegation
of Count II of the indictment.

 The jury is the exclusive judge of the facts proved and the weight to be given to the
testimony. It is the judge of the credibility of the witnesses. See Tex. Code Crim. Proc. Ann. art. 38.04
(West 1979); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is free to accept or reject any or all of the evidence
presented by either party. Saxton, 804 S.W.2d at 914; Beardsley v. State, 738 S.W.2d 681, 684 (Tex.
Crim. App. 1987). The reconciliation of evidentiary conflicts is solely within the province of the jury. 
Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury may believe a witness even
though that witness's testimony has been contradicted. Wawrykow v. State, 866 S.W.2d 87, 89 (Tex.
App.--Beaumont 1993, pet. ref'd).

 The judgment may not be overturned unless it is irrational or unsupported by proof beyond
a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The legal
sufficiency of the evidence is a question of law. See Foster v. State, 874 S.W.2d 286, 287 (Tex.
App.--Fort Worth 1994, pet. ref'd).

 With this background, we turn to appellant's contention that the evidence failed to show
that a foot was used as a deadly weapon. Under the present Penal Code and its immediate precursor,
whether an object or thing is a deadly weapon is entirely controlled by statute. Thomas v. State, 821
S.W.2d 616, 619 (Tex. Crim. App. 1991); Stanul v. State, 870 S.W.2d 329, 333 (Tex. App.--Austin
1994, pet. dism'd). A deadly weapon can be anything that in the manner of its use is capable of causing
death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 1994). Mixon v. State 781
S.W.2d 345, 346 (Tex. App.--Houston [14th Dist.] 1989), aff'd, 804 S.W.2d 107 (Tex. Crim.
App.1991). Serious bodily injury is bodily injury that creates a substantial risk of death or that causes
serious permanent disfigurement or proacted loss or impairment of any bodily member or organ. Tex.
Penal Code Ann. § 1.07(a)(46) (West 1994). Bodily injury means physical pain, illness or any impairment
or physical impairment. Tex. Penal Code Ann § 1.07(a)(8) (West 1994). Although hands or feet are not
deadly weapons per se, they can become deadly weapons in the manner of their use or intended use if it
is shown that they are capable of causing death or serious bodily injury. Turner v. State, 664 S.W.2d 86,
88-89 (Tex. Crim. App. 1983); Judd v. State, 923 S.W.2d 135, 140 (Tex. App.--Fort Worth 1996,
pet. ref'd); Brooks v. State, 900 S.W.2d 468, 472 (Tex. App.--Texarkana 1995, no pet.); Gillum v.
State, 888 S.W.2d 281,288 (Tex. App.--El Paso 1994, pet. ref'd). In Clark v. State, 886 S.W.2d 844
(Tex. App.--Eastland 1994, no pet.), the Court wrote:


The State need not show that the hands or feet actually did cause serious bodily injury. 
They [sic] must show only that they were used in a manner capable of such. Furthermore,
a showing that the defendant used his hands or feet in a manner capable of causing serious
bodily injury, even absent the intent to do so, will support a deadly weapon finding.



Id. at 845; see also Brooks, 900 S.W.2d at 472.


 In determining the deadliness of a weapon, the jury may consider all of the facts relevant
to the case. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); Quintana v. State, 777
S.W.2d 474, 478 (Tex. App.--Corpus Christi 1989, pet. ref'd). Medical testimony is helpful but it is not
required. Brooks, 900 S.W.2d at 473. Although wounds need not be inflicted, injuries or wounds inflicted
upon a victim are a factor to be considered in determining whether a deadly weapon was used. Quintana,
777 S.W.2d 478. The most important criteria is the manner in which the weapon is used. Id; Turner, 664
S.W.2d at 900; Denham v. State, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978).

 Dr. Ralidis testified that Eloisa suffered a large subdural hematoma which is generally
caused by a significant blow to the head, and which can result in death or serious neurological disability. 
Brain surgery was performed on Eloisa. The State did not, however, develop any particular medical
testimony as to whether feet could cause such damage. Eloisa detailed his disabilities resulting from his
injury. Officer Overheu testified, based on his experience that hands and feet could "most definitely" be
used as deadly weapons. Appellant admitted that he used his feet to kick Eloisa but claimed the blows
were only to the ribs. This was contradicted by Clarence Smith and Jason Pope. Both testified appellant
kicked the victim in the head. Pope, in fact, stated appellant kicked Eloisa in the head 15 times or more
while holding onto a railing. Thus, a conflict was created for the jury to resolve.

 Viewing the evidence in the light most favorable to the verdict, we conclude the facts of this
case regarding the manner of use and intended use of appellant's feet were sufficient to allow the jury to
find that his foot was used as a deadly weapon.

 Next, appellant challenges the legal sufficiency of the evidence to show that he acted with
the intent to establish, maintain or participate in a combination.

 Section 71.02 (a)(1)of the Texas Penal Code provides in pertinent part:


(a) A person commits an offense if, with intent to establish, maintain or participate in a
combination or in the profits of a combination or as a member of a criminal street
gang, he commits or conspires to commit one or more of the following:


 (1) murder, capital murder, arson . . . aggravated assault . . .



Tex. Penal Code Ann. § 71.02 (a)(1) (West Supp. 1997); see also Brooks v. State, 894 S.W.2d 843,
845 (Tex. App--Tyler 1995, no pet.).

 A combination is defined as three or more persons who collaborate in carrying on criminal
activities. Tex. Penal Code Ann. § 71.01(a) (West 1994). In the instant case, the essential elements of
the offense of which appellant was convicted were (1) appellant (2) with the intent to establish, maintain,
or participate (3) in a combination, (4) committed the offense with a deadly weapon, to wit: his foot. It
is difficult for the State to prove that a defendant intended to act within a combination. Typically, the State
has to offer evidence of the defendant's conduct, as well as the surrounding circumstances, to show that
he had knowledge of the criminal activity within the group, and that he intended to participate. Mayfield
v. State, 906 S.W.2d 46, 49 (Tex. App.--Tyler 1995, pet. ref'd).

 Proof of a culpable mental state generally relies upon circumstantial evidence. Dillon v.
State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Since mental culpability is of such a nature, it
generally must be inferred from circumstances under which the prohibited act occurred. The trier of fact
may infer intent from any facts in evidence which tend to prove the existence of such intent. Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), cert. denied, 112 S. Ct. 2944 (1992); Skillern
v. State, 890 S.W.2d 849, 880 (Tex. App.--Austin 1994, pet. ref'd). Intent can be inferred from acts,
words, and conduct of the accused. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1985);
Ybarra v. State, 890 S.W.2d 98, 109 (Tex. App.--San Antonio 1994, pet. ref'd). Moreover, an
agreement may be inferred from the acts of the parties. Shears v. State, 895 S.W.2d 456, 459 (Tex.
App.--Tyler 1995, no pet.); Childress v. State, 807 S.W.2d 424, 435 (Tex. App.--Amarillo 1992, no
pet.).

 In the instant case, appellant was charged in pertinent part with and convicted of actually
committing aggravated assault with the intent to participate in a combination. A conspiracy was not alleged
and the State had only to prove that appellant intended to "collaborate," (2) to work together, to work jointly,
to cooperate or assist the co-defendants DeQuincy Smith and Michael Merida in committing the
aggravated assault alleged. There was both direct and circumstantial evidence pertaining to appellant's
intent. In his trial testimony appellant admitted in effect that he heeded DeQuincy Smith's request and went
to the convenience store where he joined in the attack on Eloisa by kicking him. His written statement
corroborated much of his trial testimony. Both Smith and Merida were shown to have been involved in
the assault. Appellant acknowledged the group was "acting together" in beating the victim. Jason Pope
related the group was acting "as a team" in the assault. According to Clarence Smith's testimony,
appellant, DeQuincy Smith and Merida were all members of "the Crips" gang. (3) When appellant was
arrested, he was in the company of Merida.

 In challenging the sufficiency of the evidence, appellant does not contend that the elements
of aggravated assault were not shown nor does he urge that the evidence was insufficient to corroborate
the testimony of the accomplice witnesses. See Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). 
Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of
fact could have found beyond a reasonable doubt all essential elements of the offense charged including the
required intent and the finding that a foot was a deadly weapon from the manner of its use and intended use. 
Points of error one and two are overruled.

 We are aware, as earlier noted, (4) that appellant has challenged the factual sufficiency of the
evidence. The "proper standard of review for the factual sufficiency of the elements of the offense" is that
the court consider and weigh all of the evidence "without the prism of 'in the light most favorable to the
prosecution'" as required by Jackson in cases of legal insufficiency. Clewis, 922 S.W.2d at 129; Stone
v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). Thus, the reviewing
court considers all of the evidence in the record related to appellant's sufficiency challenge, not just the
evidence that supports the verdict or the court's judgment. The court should, however, set aside the
conviction only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Clewis, 922 S.W.2d at 129. When dealing with a factual sufficiency claim, an appellate court
reviews the fact finder's weighing of the evidence, but it cannot substitute its judgment for that of the fact
finder. Id. at 133; Davila v. State, 930 S.W.2d 641, 647 (Tex. App.--El Paso 1996, pet. ref'd). Having
considered all the evidence under the stated standard of review, we conclude that the conviction is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's factual
sufficiency claim is without merit.

 In the third and last point of error, appellant contends that the trial court erred in admitting
testimony of a probation officer that a co-defendant, Michael Merida, had stated that he was a member
of the "Crips" gang. Kevin Vincent testified that Merida was on probation for possession of cocaine and
reported to him in his capacity as a community supervision officer. Vincent was permitted to testify, over
the objection of hearsay and the denial of the right of confrontation and cross-examination of witnesses,
that on several occasions Merida had acknowledged being a member of the "Crips" gang. The trial court
permitted such evidence under Rule 801 (e) of the Texas Rules of Criminal Evidence.

 The State concedes that the basis of the trial court's ruling was erroneous, but urges that
any error regarding improperly admitted evidence is waived if the same facts are proven by other
unobjected-to testimony. See Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); Narvaiz v.
State, 840 S.W.2d 415, 430 (Tex. Crim App. 1992), cert. denied, 113 S. Ct. 1422 (1993); Miranda
v. State, 813 S.W.2d 724, 739 (Tex. App.--San Antonio 1991, pet. ref'd). A specific objection must
be made each time an offer of inadmissible evidence is made in order to preserve any error for review. 
Purtell v. State, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988), cert. denied, 490 U.S. 1050 (1988);
Miranda, 813 S.W.2d at 739.

 After Vincent testified, Clarence Smith testified that Merida was a "Crip" and appellant
testified that Merida said he (Merida) was a member of the "Crips" gang. This testimony was offered
without objection. Any error in admitting Vincent's testimony was waived. No reversible error is
presented. The third point of error is overruled.

 The judgment is affirmed.



 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Jones and Onion*

Affirmed

Filed: September 11, 1997

Do Not Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Factual and legal sufficiency questions are decided by different standards of review. Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Moreover in evaluating a factual sufficiency
question, the appellate court begins with the presumption that the evidence is legally sufficient under the
standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979) to support the conviction, Clewis, 922
S.W.2d at 134. It is better practice to urge these contentions in separate points of error.

2. The word "collaborate" is not defined in section 71.01(a). When terms of a statute are not
defined, courts must interpret them by the rules of grammar and common usage. Tex. Gov't Code Ann.
§ 311.011 (West 1988); Bynum v. State, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). Given its
common usage, "collaborate" means to work together in a joint project, to cooperate and assist. See
Black's Legal Dictionary, 6th Ed. (1990) at 261; Webster's Third New International Dictionary
(Merriam-Webster 1986) at 443.
3.   The first count of the indictment alleged the offense of organized criminal activity by committing
aggravated assault with intent to participate as a member of a criminal street gang. The jury acquitted
appellant of the offense charged in Count I and under the court's jury instructions moved to Count II upon
which the instant conviction is based. Appellant's lengthy argument that the State failed to prove he had
the intent to participate as a member of a criminal street gang is without merit. Such intent is not an element
of the offense of which appellant was convicted.
4.   See footnote one.



urt erred in admitting
testimony of a probation officer that a co-defendant, Michael Merida, had stated that he was a member
of the "Crips" gang. Kevin Vincent testified that Merida was on probation for possession of cocaine and
reported to him in his capacity as a community supervision officer. Vincent was permitted to testify, over
the objection of hearsay and the denial of the right of confrontation and cross-examination of witnesses,
that on several occasions Merida had acknowledged being a member of the "Crips" gang. The trial court