**Abatement Order filed September 30, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00395-CR

### ALEXI DOMINICK HEMPHILL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1327402

## A B A T E M E N T   O R D E R

Appellant Alexi Dominick Hemphill appeals his conviction for aggravated robbery.[1] In two issues, appellant argues that the trial court abused its discretion by (1) admitting evidence of an extraneous offense during the guilt-innocence stage of the trial; and (2) refusing to hold a hearing on his motion for new trial.

---

[1] *See* Tex. Penal Code Ann. § 29.03(a)(3) (Vernon 2011).

We abate and remand this case to the trial court.[2]

## BACKGROUND

Appellant was charged with aggravated robbery, and a jury trial was held from April 25, 2013 to April 29, 2013. At trial, 83-year-old complainant, Jose Valdez, testified that he was walking toward a bus stop after shopping at a Fiesta grocery store on Lyons Street between 2:30 p.m. and 3:00 p.m. on October 5, 2011, when a man came from behind, covered the complainant's mouth, and threw the complainant on his back. The complainant testified that the man hit him twice in the mouth and then continued hitting his arms. The man then pulled the complainant's wallet out of his pant pocket and ran away. The complainant testified that he saw his attacker when he was "on top of" him. He testified that he rode the bus home after the robbery and was contacted about an hour later by a police officer who told him that his wallet had been found in a ditch. The police officer returned the wallet to the complainant later in the day.

The complainant testified that he circled his attacker's photo on a photo array he was shown by police on November 10, 2011. The circled photo depicted appellant, and the complainant signed his name next to the photo. When asked whether the photo he had circled depicted the man who had robbed him on October 5, 2011, he replied "[W]ell, it looks like him. You cannot be for sure, but it looks like him." Thereafter, the complainant testified that he signed his name next to appellant's photo because he "circled who[m] he believed attacked" him.

The complainant acknowledged he was not wearing glasses at the time of the robbery and that, without his glasses, he can see "fine" with his right eye but

---

[2] Because we abate and remand this case to the trial court, we do not address in this abatement order appellant's argument that the trial court abused its discretion by admitting evidence of an extraneous offense during the guilt-innocence stage of the trial.

2

the vision in his left eye is blurry. The complainant testified that the attack lasted approximately five minutes and that he was "directly looking at his [attacker's] face" when his attacker was on top of him. The complainant testified that he "wasn't guessing" when he circled appellant's photo identifying him as his attacker.

Over defense counsel's objection, the trial court allowed the State to offer extraneous offense evidence testimony of 68-year-old robbery victim Concepcion.[3] Concepcion testified that he was robbed on September 24, 2011, as he was coming from the Fiesta grocery store on Lyons Street and walking toward a bus stop. A man hit him in the mouth, knocking out four of his teeth, and Concepcion fell backwards on the ground. The man then pulled Concepcion's wallet out of his pant pocket and ran away. Concepcion testified that the police showed him a photo array and that he identified appellant as his robber. Concepcion acknowledged that he needed prescription glasses and that he did not wear glasses when he was robbed on September 24, 2011.

Houston Police Officer Juan Olivarez testified that his investigation of the complainant's robbery led him to an apartment complex and a suspect with the nickname "PP" or "PeePee." The apartment complex was within walking distance of the robbery location. Officer Olivarez spoke to employees at the apartment complex and learned that appellant was the person known by that nickname. Officer Olivarez testified that he compiled a photo array containing photos of six black males, including a photo of appellant. Officer Olivarez showed the photo array to the complainant on November 10, 2011, after admonishing the complainant that the "person that committed the crime may or may not be present in the photo array. . . [and] that he's not required to make any selection and that

_____
[3] Concepcion did not want to state his last name on the record because he was fearful of revenge.

3

items such as head hair, facial hair are subject to change." Officer Olivarez testified that the complainant positively identified appellant as the robber. Officer Olivarez testified that he also investigated the robbery of Concepcion. He testified that he showed Concepcion a photo array containing photos of six black males, including a photo of appellant; Concepcion positively identified appellant as his robber.

After the State rested its case, defense counsel did not call any witnesses or present evidence. The jury found appellant guilty of aggravated robbery. During the punishment phase, defense counsel did not call any witnesses or present any evidence. The trial court sentenced appellant to 30 years' confinement. Appellant filed a motion for new trial on May 29, 2013, and the trial court denied the motion on June 5, 2013. Appellant filed a timely appeal.

## ANALYSIS

### I.     Motion for New Trial Hearing

Appellant contends in his second issue that the trial court abused its discretion by failing to hold an evidentiary hearing on his motion for new trial, in which he alleged ineffective assistance of counsel. Appellant argues that he timely filed and presented his motion for new trial, and he was entitled to a hearing because his motion "raised matters, upon which relief could be granted, that are not determinable from the record." The State responds that the trial court properly denied appellant an evidentiary hearing because appellant "never requested a hearing on his motion for new trial and never secured a ruling on any such request."

The State does not challenge appellant's contention that he timely filed and presented his motion for new trial. We agree that appellant timely filed and

4

presented his motion for new trial. The trial court imposed appellant's sentence on April 29, 2013, and appellant filed his motion on May 29, 2013. *See* Tex. R. App. P. 21.4.(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."); *Daniels v. State*, 63 S.W.3d 67, 69 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The record also establishes that appellant presented his motion to the trial court, as required by Texas Rule of Appellate Procedure 21.6.,[4] by obtaining the trial court's ruling on his motion. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (presentment can be shown by obtaining the trial court's ruling on a motion for new trial); *Bearnth v. State*, 361 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] pet. ref'd); *see also Reyes v. State*, 82 S.W.3d 351, 353 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The trial court denied appellant's motion for new trial on June 5, 2013.

We next address the State's assertion that "appellant cannot complain on appeal about the alleged lack of a hearing on his motion for new trial because he never requested such a hearing and never secured a ruling on any such request." The State claims that, "[w]hile the appellant did secure a ruling on his motion for new trial, which was denied by the trial court, he failed to explicitly request a hearing on the motion or to secure a ruling on any such motion for a hearing." We disagree with the State's assertion.

A reviewing court does not reach the question of whether a trial court abused its discretion in failing to hold a hearing if (1) no request for a hearing is presented to it; and (2) no ruling on the request or motion is obtained. *Garcia v. State*, 291

---

[4] Texas Rule of Appellate Procedure 21.6. provides: "The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court."

S.W.3d 1, 8 (Tex. App.—Corpus Christi 2008, no pet.); *see Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd).

In support of its argument that appellant failed to request a hearing, the State cites *Rozell v. State*, 176 S.W.3d 228, 229 (Tex. Crim. App. 2005), and *Brooks v. State*, 894 S.W.2d 843, 847 (Tex. App.—Tyler 1995, no writ).

In *Brooks*, the motion for new trial did not include a request for a hearing, and the court held that the "trial court is not required to convene a hearing on a motion for new trial absent a request by the movant for such hearing." 894 S.W.2d at 847.

In *Rozell*, the defendant made no request for a hearing in his motion for new trial. 176 S.W.3d at 229. He attached two proposed orders to his motion. *Id.* The first proposed order gave the trial court the option to set a hearing within ten 10 days of filing, set a hearing within 75 days of filing, grant the motion without a hearing, or deny the motion without a hearing. *Id.* The second proposed order gave the trial court the option to deny or grant the motion. *Id.* The trial court did not hold a hearing on the motion; and the motion was overruled by operation of law. *Id.*

The court held that the defendant "did not adequately advise the trial court of his desire to have a hearing" because (1) "[n]owhere in the motion did the [defendant] request a hearing;" and (2) the order attached to the motion "included the options of having a hearing or ruling on the motion without a hearing, which, without a more specific request, left to the trial court's discretion whether a hearing should be held."

*Rozell* and *Brooks* both are distinguishable from the case before us. Even though the prayer in appellant's motion did not specifically request a hearing, he

6

requested a hearing in the body of his motion. Appellant stated in his motion: "Because this motion raises matters outside the trial record, is properly verified, and is timely filed and presented, denying [appellant] an evidentiary hearing would be an abuse of discretion." Further, appellant attached to his motion an order giving the trial court the option to set a hearing and an order giving the trial court the option to grant or deny the motion. This record establishes that appellant requested a hearing. *See Rozell*, 176 S.W.3d at 229; *Garcia*, 291 S.W.3d at 8 (defendant requested a hearing on his motion for new trial when he asked for a hearing in the motion, attached two orders giving the trial court the sole option of setting a hearing, and attached two orders giving the trial court the option to deny or grant the motion).

The State also argues that, "[e]ven if the appellant had properly requested a hearing on his motion for new trial, he still would not be entitled to raise the issue on appeal because he failed to obtain a ruling on that nonexistent request." Without citing any applicable authority, the State asserts that the trial court did not implicitly deny appellant a hearing when it denied the motion itself.

Contrary to the State's assertion, a trial court's denial of a defendant's motion for new trial is an implicit denial of the defendant's request for a hearing. *See Garcia*, 291 S.W.3d at 9 ("[B]ased on the trial court's overruling of appellant's motion for new trial . . . [,] we find the trial court implicitly overruled appellant's request for a hearing."); *cf. Oestrick*, 939 S.W.2d at 235 ("Having failed to obtain a ruling on his request for a hearing—or at least a written order overruling his motion for new trial—and having failed to object to the lack of a ruling, appellant has not preserved this complaint for appellate review."). Here, the trial signed an order denying appellant's motion for new trial. Accordingly, the trial court implicitly denied appellant's request for a hearing. *See Garcia*, 291 S.W.3d at 9.

7

We now turn to appellant's argument that he was entitled to a hearing on his motion for new trial because his trial counsel failed to speak to (1) a witness who could have provided an alibi for the time the complainant's robbery occurred; and (2) several witnesses who could have provided testimony regarding his troubled childhood and mental health history.

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009). We reverse the trial court's decision only if it was outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).

The purposes of a new trial hearing are to (1) determine whether the case should be retried; or (2) complete the record for presenting issues on appeal. *Hobbs*, 298 S.W.3d at 199. Such a hearing is not an absolute right. *Id*. A trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record; and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id*. "This second requirement limits and prevents 'fishing expeditions.'" *Id*. "[A] movant does not have to plead a *prima facie* case, but he must at least allege facts that show reasonable grounds to believe that he could prevail under both prongs of the test for ineffective assistance of counsel under *Strickland*."[5] *Smith*, 286 S.W.3d at 338. A motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim. *Hobbs*, 298 S.W.3d at 199. If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id*.

Whether trial counsel's alleged omissions show a deficiency in performance

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

that prejudiced appellant is not readily determinable from the record in this case. *See Smith*, 286 S.W.3d at 341. Therefore, we next must determine whether appellant's motion for new trial and the supporting affidavit establish reasonable grounds showing that appellant could potentially be entitled to relief on his ineffective assistance claim by "alleg[ing] facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different." *Id*.

Under *Strickland*, a defendant seeking to challenge his trial counsel's representation must establish that his counsel's performance (1) was deficient, and (2) prejudiced his defense. *Id*. at 340. To show deficiency, a defendant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms. *Id*. And to show prejudice, a defendant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "'Reasonable probability' is a 'probability sufficient to undermine confidence in the outcome,' meaning 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*.

Appellant contends on appeal that he "requested a new trial because a witness was available who would have testified that [appellant] was caring for his young children during the time these crimes occurred; coupled with the unreliable nature of the eyewitnesses who were without their necessary eyeglasses, this testimony could have swayed the jury's verdict." With respect to this ground, we conclude that appellant's motion for new trial and supporting affidavit do not establish a reasonable ground showing that appellant could potentially be entitled to relief. Even if the facts alleged in appellant's motion and stated in the affidavit

would reasonably show that his counsel's representation fell below the standard of professional norms because counsel failed to speak to an alleged alibi witness, we cannot conclude that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different.

In his motion, appellant alleged that Rodreika McDonald never was contacted by his trial counsel and would have been willing to testify on appellant's behalf that (1) she was with appellant and their daughter every day until 5:00 p.m. from September 2011 to October 31, 2011; (2) appellant was the primary caregiver of his two and five-year-old daughters; and (3) appellant "walked the five-year-old and her ten-year-old brother to and from school each day, and stayed with the two-year-old while the other children were in school." According to appellant, "[t]his information would have been especially critical because eyewitness identifications are notoriously unreliable and if the complainant had trouble identifying [appellant], either during the investigation or during trial, could have swayed the jury's verdict of guilt."

The attached affidavit stated that McDonald never was asked by trial counsel to provide information regarding appellant and would have testified at trial that (1) "early morning through late afternoon, Monday through Friday, [appellant] was responsible for the care of his two year old daughter and five year old step daughter;" (2) appellant was "responsible for walking the five year old and his 10 year old brother to and from school each day;" and (3) she was at home with appellant and their daughter every day until 5:00 p.m. between the middle of September 2011 to October 31, 2011.

Contrary to appellant's assertion, the attached affidavit does not support his claim that McDonald would have provided him with an alibi for the time the complainant's robbery occurred. Nothing in the affidavit establishes that appellant

could not have robbed the complainant between 2:30 and 3:00 p.m. on October 5, 2011. The affidavit provides that appellant was responsible for caring for his young children during the day and walking two children to and from school. The affidavit does not specify what time appellant would walk the children to and from school or where he was during the day when he would not walk them to school. Nor does the affidavit negate the possibility that appellant could have robbed the complainant before picking the children up from school. The affidavit states that McDonald would have testified that she was at home with appellant until 5:00 p.m. every day; however, it does not state from what time in the day until 5:00 p.m. she was at home with appellant.

We conclude that appellant's motion for new trial and supporting affidavit do not establish reasonable grounds showing that appellant could potentially be entitled to relief insofar as the purported alibi witness is concerned. Therefore, the trial court did not abuse its discretion in failing to hold a hearing on appellant's motion for new trial with regard to this contention.

We next consider appellant's argument on appeal that he was entitled to a hearing on his motion for new trial because his trial counsel "failed to speak with crucial punishment phase witnesses who would have testified as to his troubled childhood with a drug abusing mother, his mental health history, the murder of his sixteen year old sister and the behavioral changes he expressed after, and his reputation for being helpful to the elderly people in his neighborhood."

In his motion for new trial, appellant alleged that his trial counsel failed to contact and call several available witnesses to testify on his behalf to attempt to mitigate his punishment. According to appellant, these witnesses would have testified that (1) he was the primary caregiver for his small children; (2) his mother abused drugs and was "'in the streets'" for much of his childhood; (3) his "mental

11

stability changed drastically after his sixteen-year-old sister was found brutally murdered;" (4) "he has mental health history and treatment;" and (5) he was "helpful to older people and was someone these witnesses trusted and loved." Appellant argues that calling these available witnesses would have been beneficial, and trial counsel's failure to interview and call these witnesses cannot be sanctioned as strategic because counsel can only make a reasonable decision to forego calling such witnesses after evaluating their testimony and then determining it would not be helpful.

> Appellant's supporting affidavit provided as follows:
>
> Darius Dugas and Shawn Dugas would have provided testimony pertaining to [appellant]'s childhood and that his mother was abusing drugs and 'in the streets' while [appellant] was growing up.
>
> Cornelia Hemphill, Rodreika McDonald and Alisia Hemphill would have provided testimony regarding [appellant]'s mental health history and the treatment he received at MHMRA. Cornelia Hemphill would have provided information regarding the impact of the murder of his sixteen year old sister on [appellant] and the resulting changes in his behavior.
>
> Brenetta Francis would have described [appellant] as not aggressive or violent and someone she trusted to take care of and keep her children safe.
>
> Bianca Dugas would have explained that [appellant] was always helpful to older people in the neighborhood, carried their groceries and mowed their lawns. [Appellant] watched after her grandmother, making sure she got on the bus safely each day and walking her home when she returned.

We interpret appellant's motion and affidavit to assert that trial counsel generally failed to investigate the possibility of mitigating evidence, including appellant's mental health, reputation, and difficult childhood, and failed to interview and call several potential witnesses despite their availability and willingness to testify in his

behalf.

"The sentencing stage of any case, regardless of the potential punishment, is 'the time at which for many defendants the most important services of the entire proceeding can be performed.'" *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (quoting *Vela v. Estelle*, 708 F.2d 954, 964 (5th Cir. 1983)). Where the potential punishment is life imprisonment, as in this case, the sentencing proceeding takes on added importance. *Id*.

"*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). But counsel can make a reasonable decision to forego presentation of mitigating evidence only after evaluating available testimony and determining that it would not be helpful. *Milburn*, 15 S.W.3d at 270. Counsel's performance is deficient when counsel fails to conduct an adequate investigation of a defendant's background for potential mitigating evidence. *See id*. at 269-70 (counsel failed to investigate and interview potential punishment witnesses who would have testified in defendant's behalf); *see also Wiggins*, 539 U.S. at 533-35 (counsel's limited investigation failed to disclose evidence of severe physical and sexual abuse defendant suffered at the hands of his mother and while he was in foster care); *Barnett v. State*, 338 S.W.3d 680, 685-87 (Tex. App.—Texarkana 2011, pet. ref'd) (per curiam) (counsel failed to investigate the possibility of introducing mitigating evidence at the punishment stage).

Here, appellant alleged in his motion for new trial that his trial counsel failed to contact, interview, and call several available witnesses to testify on his behalf to attempt to mitigate his punishment. The attached affidavit provided that several

13

witnesses would have testified regarding appellant's troubled childhood, his mental health history and the treatment he received at MHMRA, and his reputation in the community, but were never contacted by appellant's counsel. As a result of counsel's alleged inaction, the trial court had no mitigating evidence before it. We conclude that appellant has alleged facts that potentially could meet the first *Strickland* prong. *See Barnett*, 338 S.W.3d at 686; *Milburn*, 15 S.W.3d at 269-70.

If appellant's counsel indeed failed to present mitigating evidence based on a failure to investigate, appellant could also meet the second prong of *Strickland*. *See Barnett*, 338 S.W.3d at 686; *Milburn*, 15 S.W.3d at 270-71.

During the punishment phase of trial, the State called Trecie Baskin who identified appellant as the person who committed an extraneous robbery in the evening of September 24, 2011. The State also presented evidence of several misdemeanor and third degree felony convictions. Appellant's trial counsel cross-examined Baskin but did not call any witnesses or present any mitigating evidence on behalf of appellant. Nor did counsel mention appellant's troubled childhood, mental health history, or good reputation in the community during his brief closing argument. The trial court heard no favorable character or otherwise mitigating evidence and assessed appellant's punishment at thirty years' confinement as the State had requested during its closing statement.

"The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Milburn*, 15 S.W.3d at 270 (citing *Vela*, 708 F.2d at 965). Here, trial counsel did not present any evidence of mitigating factors for the trial court to weigh against the aggravating factors presented by the State despite available witnesses who were willing to provide mitigating evidence.

We have previously stated in *Milburn* that, "even though it is sheer

14

speculation that character witnesses in mitigation would have in fact favorably influenced the [trial court]'s assessment of punishment," a defendant nonetheless demonstrates prejudice when a counsel's failure to investigate and lack of effort at the punishment phase of trial deprives a defendant of the possibility of bringing out even a single mitigating factor. *Id.* at 271. Mitigating evidence of (1) a troubled childhood; (2) mental health history and treatment; and (3) a good reputation in the community "clearly would have been admissible" and "the [trial court] would have considered it and possibly been influenced by it." *See id.*; *see also Barnett*, 338 S.W.3d at 687; *Freeman v. State*, 167 S.W.3d 114, 121 (Tex. App.—Waco 2005, no pet.).

Thus, we conclude that appellant's motion for new trial and the accompanying affidavit provide reasonable grounds to believe that appellant can satisfy both prongs of *Strickland*. Because the motion and affidavit raised reasonable grounds for relief that are not determinable from the record, the trial court abused its discretion by not holding a hearing on the motion for new trial. Accordingly, we sustain appellant's second issue in part.

## CONCLUSION

Having sustained appellant's second issue in part, we abate this appeal for 60 days and remand the case to the trial court to conduct a hearing on appellant's motion for new trial regarding his contention that he was denied ineffective assistance of counsel at the punishment phase of trial because of counsel's failure to investigate, interview, and call witnesses to provide mitigating evidence. *See Thomas v. State*, 286 S.W.3d 109, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (ordering abatement to conduct hearing on motion for new trial alleging that trial counsel was ineffective for not advising defendant to agree to mistrial and not calling particular witness). The trial court shall see that a record of the hearing is

15

made, and shall order the court reporter and the trial clerk to forward a transcribed record of the hearing and a supplemental clerk's record containing the trial court's signed order ruling on the motion for new trial. Those records shall be filed with the clerk of this court within 30 days of the trial court's ruling on appellant's motion for new trial.

The appeal is abated, treated as a closed case, and removed from this court's active docket. The appeal will be reinstated on this court's active docket when the supplemental reporter's and clerk's records are filed. The court will also consider an appropriate motion to reinstate the appeal filed by either party, or the court may reinstate the appeal on its own motion. It is the responsibility of any party seeking reinstatement to request a hearing date from the trial court and to schedule a hearing in compliance with this court's order. If the parties do not request a hearing, the court coordinator of the trial court shall set a hearing date and notify the parties of such date.

If the motion is overruled, the parties will be permitted to brief any issues relating to the overruling of the motion that have not already been addressed in this abatement order.

It is so ORDERED.


/s/     William J. Boyce
        Justice



Panel consists of Justices Boyce, Busby and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

16