**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed March 26, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00395-CR

## ALEXI DOMINICK HEMPHILL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1327402

## M E M O R A N D U M   O P I N I O N

Appellant Alexi Dominick Hemphill was convicted by a jury of aggravated robbery[1] and sentenced by the trial court to 30 years' confinement. On appeal, appellant argued in two issues that the trial court abused its discretion by (1) admitting evidence of an extraneous offense during the guilt-innocence stage of the

---

[1] *See* Tex. Penal Code Ann. § 29.03(a)(3) (Vernon 2011).

trial; and (2) refusing to hold a hearing on his motion for new trial, in which he asserted that he received ineffective assistance of counsel during the guilt-innocence and punishment phase of the trial.

We agree that the trial court abused its discretion in failing to hold a hearing on appellant's motion for new trial regarding whether appellant received ineffective assistance of counsel during the punishment phase of the trial. We abated the appeal and remanded the case to the trial court to conduct a hearing on appellant's motion for new trial regarding appellant's contention that he was denied effective assistance of counsel during the punishment phase of the trial.

The trial court conducted a hearing, concluded that appellant met his burden of proving that he received ineffective assistance of counsel, and recommended that appellant receive a new punishment hearing. We ordered the appeal reinstated. We provided an opportunity for appellant and the State to file supplemental briefing in light of the trial court's recommendation after abatement; no supplemental briefs were filed.

We affirm the trial court's judgment as to appellant's conviction, we reverse the trial court's judgment as to appellant's punishment, and we remand the case to the trial court for a new punishment hearing.

## BACKGROUND

Appellant was charged with aggravated robbery, and a jury trial was held on guilt-innocence from April 25, 2013 to April 29, 2013. At trial, the 83-year-old complainant, Jose Valdez, testified that he was walking toward a bus stop after shopping at a Fiesta grocery store on Lyons Street between 2:30 p.m. and 3:00 p.m. on October 5, 2011, when a man came from behind, covered the complainant's mouth, and threw the complainant on his back. The complainant

2

testified that the man hit him twice in the mouth and then continued hitting his arms. The man then pulled the complainant's wallet out of his pants pocket and ran away. The complainant testified that he saw his attacker when he was "on top of" him. He testified that he rode the bus home after the robbery and was contacted about an hour later by a police officer who told him that his wallet had been found in a ditch. The police officer returned the wallet to the complainant later in the day.

The complainant testified that he circled his attacker's photo on a photo array he was shown by police on November 10, 2011. The circled photo depicted appellant, and the complainant signed his name next to the photo. When asked whether the photo he had circled depicted the man who had robbed him on October 5, 2011, he replied "[W]ell, it looks like him. You cannot be for sure, but it looks like him." Thereafter, the complainant testified that he signed his name next to appellant's photo because he "circled who[m] he believed attacked" him.

The complainant acknowledged he was not wearing glasses at the time of the robbery and that, without his glasses, he can see "fine" with his right eye but the vision in his left eye is blurry. The complainant testified that the attack lasted approximately five minutes and that he was "directly looking at his [attacker's] face" when his attacker was on top of him. The complainant testified that he "wasn't guessing" when he circled appellant's photo identifying him as his attacker.

Over defense counsel's objection, the trial court allowed the State to offer extraneous offense testimony from a 68-year-old robbery victim whose first name is Concepcion.[2] Concepcion testified that he was robbed on September 24, 2011, as he was coming from the Fiesta grocery store on Lyons Street and walking

---

[2] Concepcion did not want to state his last name on the record because he was fearful of revenge.

3

toward a bus stop.  A man hit him in the mouth, knocking out four of his teeth, and Concepcion fell backwards on the ground.  The man then pulled Concepcion's wallet out of his pants pocket and ran away.  Concepcion testified that the police showed him a photo array and that he identified appellant as his robber. Concepcion acknowledged that he needed prescription glasses and that he did not wear glasses when he was robbed on September 24, 2011.

Houston Police Officer Juan Olivarez testified that his investigation of the complainant's robbery led him to an apartment complex and a suspect with the nickname "PP" or "PeePee."  The apartment complex was within walking distance of the robbery location.  Officer Olivarez spoke to employees at the apartment complex and learned that appellant was the person known by that nickname. Officer Olivarez testified that he compiled a photo array containing photos of six black males, including a photo of appellant.  Officer Olivarez showed the photo array to the complainant on November 10, 2011, after admonishing the complainant that the "person that committed the crime may or may not be present in the photo array. . . [and] that he's not required to make any selection and that items such as head hair, facial hair are subject to change."  Officer Olivarez testified that the complainant positively identified appellant as the robber.  Officer Olivarez testified that he also investigated the robbery of Concepcion.  He testified that he showed Concepcion a photo array containing photos of six black males, including a photo of appellant; Concepcion positively identified appellant as his robber.

After the State rested its case, defense counsel did not call any witnesses or present evidence.  The jury found appellant guilty of aggravated robbery.  During the punishment phase, defense counsel did not call any witnesses or present any evidence.  The trial court sentenced appellant to 30 years' confinement.  Appellant

filed a motion for new trial on May 29, 2013, and the trial court denied the motion on June 5, 2013. Appellant filed a timely appeal.

ANALYSIS

## I.     Admission of Extraneous Offense Evidence

We begin by addressing appellant's first issue, in which he argues that the trial court abused its discretion by admitting evidence of the extraneous aggravated robbery of Concepcion during the guilt-innocence phase of the trial in violation of Texas Rules of Evidence 404(b) and 403 because the charged offense and the extraneous offense were not similar enough and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State argues that the extraneous offense evidence was admissible to prove appellant's identity and the probative value of the evidence outweighed any danger of unfair prejudice.

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the trial court's ruling. *Id.* at 343-44. A trial court's ruling generally is within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial court gave the wrong reason for its right ruling. *Id.*

5

### 1. Rule 404(b)

Texas Rule of Evidence 404(b) prohibits admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). Extraneous offenses may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id*. This list is illustrative, rather than exhaustive, and extraneous offense evidence may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense. *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).

An extraneous offense may be admissible to prove identity only if identity is at issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). "The trial judge has considerable latitude in determining that identity is, in fact, disputed." *Segundo v. State*, 270 S.W.3d 79, 86 (Tex. Crim. App. 2008). Identity may be placed in dispute by the defendant's opening statement or cross-examination as well as by affirmative evidence offered by the defense. *Id*. Cross-examination places identity at issue if it implies the witness's identification of the defendant is not trustworthy. *Mason v. State*, 416 S.W.3d 720, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). "That the impeachment was not particularly damaging or effective in light of all of the evidence presented is not the question." *Segundo*, 270 S.W.3d at 86. "The question is whether impeachment occurred that raised the issue of identity." *Id*. "If so, Rule 404(b) permits the introduction of extraneous offenses that are relevant to the issue of identity." *Id*.

Appellant's identity as the robber in this case was contested. Appellant raised the issue of identity as a defense by vigorously cross-examining the complainant regarding the reliability of his identification of appellant as the robber.

6

He cross-examined the complainant regarding (1) the robber's height; (2) the complainant's vision and whether he needed and, if so, wore glasses at the time of the robbery; (3) whether he guessed that appellant was the robber at the time he identified appellant on the photo array; (4) whether he "really did not get a very good look" at the robber; (5) whether he saw appellant's tattoo; and (6) whether he gave the police a description of the robber's height. Additionally, appellant does not dispute on appeal that identity was at issue in this case; instead, he only argues that evidence of the Concepcion robbery was not "probative on the issue of identity because it did not have any unique traits to distinguish it from any other armed robbery."

Raising the issue of identity does not automatically render evidence of an extraneous offence admissible. *Page*, 213 S.W.3d at 336. "When the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's 'distinctive and idiosyncratic manner of committing criminal acts.'" *Id*. (quoting *Martin*, 173 S.W.3d at 468). "[T]he theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a 'signature.'" *Segundo*, 270 S.W.3d at 88. "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id*. "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual." *Id*. The extraneous offense and the charged offense can be different offenses, so long as the similarities between the two offenses are such that the

evidence is relevant. *Mason*, 416 S.W.3d at 740-41.

A comparison between the charged offense and the extraneous offense shows a sufficient degree of similarity. The record reveals that both offenses occurred within only eleven days of each other and had the following similarities: (1) both offenses were aggravated robberies; (2) both robberies were committed against elderly Hispanic males who had left the Fiesta grocery store on Lyons Street after shopping there; (3) both victims carried groceries they had bought at the store and were walking toward the nearby bus stop; (4) both victims were robbed by a single black male; (5) the victims were both forced to the ground and then hit several times on the mouth; and (6) while on the ground, the robber took both victims' wallets from the back pocket of their pants and then escaped on foot.

We conclude that the trial court acted within its discretion in determining that the similarities between the charged offense and the extraneous offense are sufficient to show appellant's idiosyncratic or signature style of robbery; the trial court acted within its discretion in admitting the extraneous offense to prove identity. *See Page*, 213 S.W.3d at 338 (stating that Texas law "does not require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity" and noting that, despite some differences, the similarities there showed a distinctive manner of committing a crime); *Burton v. State*, 230 S.W.3d 846, 850-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that charged bank robbery and extraneous bank robberies were sufficiently similar when banks all had no onsite security, the robbed tellers were young, and the robber made the robbery demand initially with a note).

## 2.    Rule 403

We next address whether the trial court abused its discretion in failing to exclude the extraneous offense evidence under Rule 403, even if the evidence was

relevant and admissible under rule 404(b).

Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. But "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). Evidence should be excluded under Rule 403 only when there exists "'a clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

In evaluating a trial court's ruling under Rule 403, "a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion.'" *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g)). When undertaking a Rule 403 analysis, we must balance (1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable; (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way; (3) the trial time needed to develop the evidence; and (4) the proponent's need for the extraneous offense evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002); *Checo v. State*, 402 S.W.3d 440, 452 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

The first factor requires us to consider the strength of the extraneous offense evidence to make a fact of consequence more or less probable. During cross-examination, appellant questioned, among others, the complainant's description of

9

his attacker and the complainant's ability to see his attacker during the robbery. Appellant also questioned the reliability of the complainant's identification of appellant on a photo array. Further, appellant stated during closing argument: "In my opinion, there is really one issue here. Identity. Who committed this offense?" Given the similarity of the characteristics of the charged offense and the extraneous offense, the near identical location where the two offenses were committed, and the close time interval between the two offenses, the extraneous offense evidence is compelling as to the issue of identity. This factor weighs in favor of admissibility. *See Mason*, 416 S.W.3d at 741; *Burton*, 230 S.W.3d at 851.

The second factor requires us to consider the extraneous offense evidence for its potential to impress the jury in some irrational but indelible way. When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996). Moreover, any impermissible inference of character conformity can be minimized by the use of a limiting instruction. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). Here, the trial court gave the jury a limiting instruction before it allowed the State to present evidence of the aggravated robbery of Concepcion, and also gave a limiting instruction in the jury charge regarding this extraneous offense. This factor weighs in favor of admissibility. *See Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

The third factor requires us to examine the trial time needed to develop the extraneous offense evidence. The evidentiary portion of the trial lasted approximately a day and a half. Concepcion and Officer Juan Olivarez were the only two witnesses who testified at trial about the extraneous offense. Their testimony did not take up a significant portion of the trial, and the amount of time

used for their testimony was reasonable and not excessive. This factor weighs in favor of admissibility. *See id*.

The fourth factor requires us to determine the need for the extraneous offense evidence in this case. The extraneous offense evidence was significant to the State's case. There was no other witness who could have identified appellant as the robber, and there was no physical evidence linking appellant to the robbery of the complainant. During cross-examination, appellant vigorously attacked the reliability of the complainant's identification of appellant on the photo array as well as the complainant's ability to see appellant during the robbery because he was not wearing glasses. The need for the extraneous evidence was strong. This factor also weighs in favor of admissibility.

We conclude that the trial court acted within its discretion when it determined that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice, and admitted the evidence under Rule 403. Accordingly, we overrule appellant's first issue.

## II.    Ineffective Assistance of Counsel

### A.    Hearing on Motion for New Trial

Appellant originally argued in his second issue that the trial court abused its discretion by failing to hold an evidentiary hearing on his motion for new trial, in which he alleged ineffective assistance of counsel. Appellant argued that he timely filed and presented his motion for new trial, and he was entitled to a hearing because his motion "raised matters, upon which relief could be granted, that are not determinable from the record." The State responded that the trial court properly denied appellant an evidentiary hearing because appellant "never requested a hearing on his motion for new trial and never secured a ruling on any such

11

request."

The State did not challenge appellant's contention that he timely filed and presented his motion for new trial. We agreed that appellant timely filed and presented his motion for new trial. The trial court imposed appellant's sentence on April 29, 2013, and appellant filed his motion on May 29, 2013. *See* Tex. R. App. P. 21.4.(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."); *Daniels v. State*, 63 S.W.3d 67, 69 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The record also established that appellant presented his motion to the trial court, as required by Texas Rule of Appellate Procedure 21.6,[3] by obtaining the trial court's ruling on his motion. *See Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (presentment can be shown by obtaining the trial court's ruling on a motion for new trial); *Bearnth v. State*, 361 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] pet. ref'd); *see also Reyes v. State*, 82 S.W.3d 351, 353 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The trial court denied appellant's motion for new trial on June 5, 2013.

The State asserted that "appellant cannot complain on appeal about the alleged lack of a hearing on his motion for new trial because he never requested such a hearing and never secured a ruling on any such request." The State claimed that, "[w]hile the appellant did secure a ruling on his motion for new trial, which was denied by the trial court, he failed to explicitly request a hearing on the motion or to secure a ruling on any such motion for a hearing." In our abatement order, we disagreed with the State's assertion.

---

[3] Texas Rule of Appellate Procedure 21.6. provides: "The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court."

A reviewing court does not reach the question of whether a trial court abused its discretion in failing to hold a hearing if (1) no request for a hearing is presented to it; and (2) no ruling on the request or motion is obtained. *Garcia v. State*, 291 S.W.3d 1, 8 (Tex. App.—Corpus Christi 2008, no pet.); *see Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd).

In support of its argument that appellant failed to request a hearing, the State cited *Rozell v. State*, 176 S.W.3d 228, 229 (Tex. Crim. App. 2005), and *Brooks v. State*, 894 S.W.2d 843, 847 (Tex. App.—Tyler 1995, no writ).

In *Brooks*, the motion for new trial did not include a request for a hearing, and the court held that the "trial court is not required to convene a hearing on a motion for new trial absent a request by the movant for such hearing." 894 S.W.2d at 847.

In *Rozell*, the defendant made no request for a hearing in his motion for new trial. 176 S.W.3d at 229. He attached two proposed orders to his motion. *Id*. The first proposed order gave the trial court the option to set a hearing within ten days of filing, set a hearing within 75 days of filing, grant the motion without a hearing, or deny the motion without a hearing. *Id*. The second proposed order gave the trial court the option to deny or grant the motion. *Id*. The trial court did not hold a hearing on the motion; and the motion was overruled by operation of law. *Id*.

The court held that the defendant "did not adequately advise the trial court of his desire to have a hearing" because (1) "[n]owhere in the motion did the [defendant] request a hearing;" and (2) the order attached to the motion "included the options of having a hearing or ruling on the motion without a hearing, which, without a more specific request, left to the trial court's discretion whether a hearing should be held." *Id*. at 231.

13

We concluded that *Rozell* and *Brooks* both were distinguishable from the case before us. Even though the prayer in appellant's motion did not specifically request a hearing, he requested a hearing in the body of his motion. Appellant stated in his motion: "Because this motion raises matters outside the trial record, is properly verified, and is timely filed and presented, denying [appellant] an evidentiary hearing would be an abuse of discretion." Further, appellant attached to his motion an order giving the trial court the option to set a hearing and an order giving the trial court the option to grant or deny the motion. This record established that appellant requested a hearing. *See Rozell*, 176 S.W.3d at 229; *Garcia*, 291 S.W.3d at 8 (defendant requested a hearing on his motion for new trial when he asked for a hearing in the motion, attached two orders giving the trial court the sole option of setting a hearing, and attached two orders giving the trial court the option to deny or grant the motion).

The State also argued that, "[e]ven if the appellant had properly requested a hearing on his motion for new trial, he still would not be entitled to raise the issue on appeal because he failed to obtain a ruling on that nonexistent request." The State asserted that the trial court did not implicitly deny appellant a hearing when it denied the motion itself.

We concluded that, contrary to the State's assertion, a trial court's denial of a defendant's motion for new trial is an implicit denial of the defendant's request for a hearing. *See Garcia*, 291 S.W.3d at 9 ("[B]ased on the trial court's overruling of appellant's motion for new trial . . . [,] we find the trial court implicitly overruled appellant's request for a hearing."); *cf. Oestrick*, 939 S.W.2d at 235 ("Having failed to obtain a ruling on his request for a hearing—or at least a written order overruling his motion for new trial—and having failed to object to the lack of a ruling, appellant has not preserved this complaint for appellate

review."). Here, the trial court signed an order denying appellant's motion for new trial and, thus, implicitly denied appellant's request for a hearing. *See Garcia*, 291 S.W.3d at 9.

We then analyzed appellant's argument that he was entitled to a hearing on his motion for new trial because his trial counsel failed to speak to (1) a witness who could have provided an alibi for the time the complainant's robbery occurred; and (2) several witnesses who could have provided testimony regarding his troubled childhood and mental health history.

A trial court's denial of a hearing on a motion for new trial is reviewed for an abuse of discretion. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009). The trial court's decision is reversed only if it was outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).

The purposes of a new trial hearing are to (1) determine whether the case should be retried; or (2) complete the record for presenting issues on appeal. *Hobbs*, 298 S.W.3d at 199. Such a hearing is not an absolute right. *Id*. A trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record; and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id*. "This second requirement limits and prevents 'fishing expeditions.'" *Id*. "[A] movant does not have to plead a prima facie case, but he must at least allege facts that show reasonable grounds to believe that he could prevail under both prongs of the test for ineffective assistance of counsel under Strickland."[4] *Smith*, 286 S.W.3d at 338. A motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim.

_____

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

*Hobbs*, 298 S.W.3d at 199. If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id*.

Whether trial counsel's alleged omissions show a deficiency in performance that prejudiced appellant was not readily determinable from the record in this case. *See Smith*, 286 S.W.3d at 341. Therefore, we examined whether appellant's motion for new trial and the supporting affidavit established reasonable grounds showing that appellant potentially could be entitled to relief on his ineffective assistance claim by "alleg[ing] facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different." *Id*.

Under *Strickland*, a defendant seeking to challenge his trial counsel's representation must establish that his counsel's performance (1) was deficient, and (2) prejudiced his defense. *Id*. at 340. To show deficiency, a defendant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms. *Id*. And to show prejudice, a defendant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "'Reasonable probability' is a 'probability sufficient to undermine confidence in the outcome,' meaning 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*.

Appellant contended on appeal that he "requested a new trial because a witness was available who would have testified that [appellant] was caring for his young children during the time these crimes occurred; coupled with the unreliable nature of the eyewitnesses who were without their necessary eyeglasses, this

testimony could have swayed the jury's verdict." With respect to this ground, we concluded that appellant's motion for new trial and supporting affidavit did not establish a reasonable ground showing that appellant could potentially be entitled to relief. Even if the facts alleged in appellant's motion and stated in the affidavit reasonably would show that his counsel's representation fell below the standard of professional norms because counsel failed to speak to an alleged alibi witness, we could not conclude that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different.

In his motion, appellant alleged that Rodreika McDonald never was contacted by his trial counsel and would have been willing to testify on appellant's behalf that (1) she was with appellant and their daughter every day until 5:00 p.m. from September 2011 to October 31, 2011; (2) appellant was the primary caregiver of his two and five-year-old daughters; and (3) appellant "walked the five-year-old and her ten-year-old brother to and from school each day, and stayed with the two-year-old while the other children were in school." According to appellant, "[t]his information would have been especially critical because eyewitness identifications are notoriously unreliable and if the complainant had trouble identifying [appellant], either during the investigation or during trial, could have swayed the jury's verdict of guilt."

The attached affidavit stated that McDonald never was asked by trial counsel to provide information regarding appellant and would have testified at trial that (1) "early morning through late afternoon, Monday through Friday, [appellant] was responsible for the care of his two year old daughter and five year old step daughter;" (2) appellant was "responsible for walking the five year old and his 10 year old brother to and from school each day;" and (3) she was at home with appellant and their daughter every day until 5:00 p.m. between the middle of

17

September 2011 to October 31, 2011.

We concluded that, contrary to appellant's assertion, the attached affidavit did not support his claim that McDonald would have provided him with an alibi for the time the complainant's robbery occurred. Nothing in the affidavit established that appellant could not have robbed the complainant between 2:30 and 3:00 p.m. on October 5, 2011. The affidavit provided that appellant was responsible for caring for his young children during the day and walking two children to and from school. The affidavit did not specify what time appellant would walk the children to and from school or where he was during the day when he would not walk them to school. Nor did the affidavit negate the possibility that appellant could have robbed the complainant before picking the children up from school. The affidavit stated that McDonald would have testified that she was at home with appellant until 5:00 p.m. every day; however, it did not state from what time in the day until 5:00 p.m. she was at home with appellant.

We thus concluded that appellant's motion for new trial and supporting affidavit did not establish reasonable grounds showing that appellant could potentially be entitled to relief insofar as the purported alibi witness is concerned. Therefore, we concluded that the trial court did not abuse its discretion in failing to hold a hearing on appellant's motion for new trial with regard to this contention.

We also considered appellant's argument that he was entitled to a hearing on his motion for new trial because his trial counsel "failed to speak with crucial punishment phase witnesses who would have testified as to his troubled childhood with a drug abusing mother, his mental health history, the murder of his sixteen year old sister and the behavioral changes he expressed after, and his reputation for being helpful to the elderly people in his neighborhood."

In his motion for new trial, appellant alleged that his trial counsel failed to

contact and call several available witnesses to testify on his behalf to attempt to mitigate his punishment. According to appellant, these witnesses would have testified that (1) he was the primary caregiver for his small children; (2) his mother abused drugs and was "'in the streets'" for much of his childhood; (3) his "mental stability changed drastically after his sixteen-year-old sister was found brutally murdered;" (4) "he has mental health history and treatment;" and (5) he was "helpful to older people and was someone these witnesses trusted and loved." Appellant argued that calling these available witnesses would have been beneficial, and trial counsel's failure to interview and call these witnesses cannot be sanctioned as strategic because counsel can only make a reasonable decision to forego calling such witnesses after evaluating their testimony and then determining it would not be helpful.

Appellant's supporting affidavit stated as follows:

> Darius Dugas and Shawn Dugas would have provided testimony pertaining to [appellant]'s childhood and that his mother was abusing drugs and 'in the streets' while [appellant] was growing up.

> Cornelia Hemphill, Rodreika McDonald and Alisia Hemphill would have provided testimony regarding [appellant]'s mental health history and the treatment he received at MHMRA. Cornelia Hemphill would have provided information regarding the impact of the murder of his sixteen year old sister on [appellant] and the resulting changes in his behavior.

> Brenetta Francis would have described [appellant] as not aggressive or violent and someone she trusted to take care of and keep her children safe.

> Bianca Dugas would have explained that [appellant] was always helpful to older people in the neighborhood, carried their groceries and mowed their lawns. [Appellant] watched after her grandmother, making sure she got on the bus safely each day and walking her home when she returned.

19

Appellant's motion and affidavit support an assertion that trial counsel generally failed to investigate the possibility of mitigating evidence, including appellant's mental health, reputation, and difficult childhood, and failed to interview and call several potential witnesses despite their availability and willingness to testify in his behalf.

"The sentencing stage of any case, regardless of the potential punishment, is 'the time at which for many defendants the most important services of the entire proceeding can be performed.'" *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (quoting *Vela v. Estelle*, 708 F.2d 954, 964 (5th Cir. 1983)). Where the potential punishment is life imprisonment, as in this case, the sentencing proceeding takes on added importance. *Id.*

"*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). But counsel can make a reasonable decision to forego presentation of mitigating evidence only after evaluating available testimony and determining that it would not be helpful. *Milburn*, 15 S.W.3d at 270. Counsel's performance is deficient when counsel fails to conduct an adequate investigation of a defendant's background for potential mitigating evidence. *See id.* at 269-70 (counsel failed to investigate and interview potential punishment witnesses who would have testified in defendant's behalf); *see also Wiggins*, 539 U.S. at 533-35 (counsel's limited investigation failed to disclose evidence of severe physical and sexual abuse defendant suffered at the hands of his mother and while he was in foster care); *Barnett v. State*, 338 S.W.3d 680, 685-87 (Tex. App.—Texarkana 2011, no pet.) (per curiam) (counsel failed to investigate the possibility of introducing mitigating

evidence at the punishment stage).

Here, appellant alleged in his motion for new trial that his trial counsel failed to contact, interview, and call several available witnesses to testify on his behalf to attempt to mitigate his punishment. The attached affidavit stated that witnesses would have testified regarding appellant's troubled childhood, his mental health history and the treatment he received at MHMRA, and his reputation in the community, but were never contacted by appellant's counsel. As a result of counsel's alleged inaction, the trial court had no mitigating evidence before it. We concluded that appellant alleged facts that potentially could meet the first *Strickland* prong. *See Barnett*, 338 S.W.3d at 686; *Milburn*, 15 S.W.3d at 269-70; *see also Lopez v. State*, No. 01-13-01079, 2015 WL 832059 at *6 (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, no pet. h.) (*Strickland*'s first prong satisfied in case in which trial counsel "did not participate in collecting mitigation evidence, did not review the mitigating evidence his client collected without his assistance, and did not present any mitigation evidence on his client's behalf at the hearing.").

We also concluded that, if appellant's counsel indeed failed to present mitigating evidence based on a failure to investigate, appellant potentially could meet the second prong of *Strickland*. *See Barnett*, 338 S.W.3d at 686; *Milburn*, 15 S.W.3d at 270-71.

During the punishment phase of trial, the State called Trecie Baskin; she identified appellant as the person who committed an extraneous robbery in the evening of September 24, 2011. The State also presented evidence of several misdemeanor and third degree felony convictions. Appellant's trial counsel cross-examined Baskin but did not call any witnesses or present any mitigating evidence on behalf of appellant. Nor did counsel mention appellant's childhood, mental health history, or reputation in the community during his brief closing argument.

21

The trial court heard no favorable character or otherwise mitigating evidence and assessed appellant's punishment at thirty years' confinement as the State had requested during its closing statement.

"The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Milburn*, 15 S.W.3d at 270 (citing *Vela*, 708 F.2d at 965). Here, trial counsel did not present any evidence of mitigating factors for the trial court to weigh against the aggravating factors presented by the State, despite available witnesses who were willing to provide mitigating evidence. *See Lopez,* 2015 WL 832059, at *8 (Prejudice established because, "[b]y neither investigating nor presenting evidence for the trial court to consider in assessing punishment, trial counsel deprived Lopez of even a possibility of developing a mitigating defense.")

As previously stated in *Milburn*, "even though it is sheer speculation that character witnesses in mitigation would have in fact favorably influenced the [trial court]'s assessment of punishment," a defendant nonetheless demonstrates prejudice when a counsel's failure to investigate and lack of effort at the punishment phase of trial deprives a defendant of the possibility of bringing out even a single mitigating factor. *Milburn*, 15 S.W.3d at 271. Mitigating evidence of (1) a troubled childhood; (2) mental health history and treatment; and (3) a good reputation in the community "clearly would have been admissible" and "the [trial court] would have considered it and possibly been influenced by it." *See id*.; *see also Barnett*, 338 S.W.3d at 687; *Freeman v. State*, 167 S.W.3d 114, 121 (Tex. App.—Waco 2005, no pet.).

Thus, we concluded that appellant's motion for new trial and the accompanying affidavit provided reasonable grounds to believe that appellant potentially could satisfy both prongs of *Strickland*. We concluded that the trial

22

court abused its discretion by not holding a hearing on the motion for new trial because the motion and affidavit raised reasonable grounds for relief that are not determinable from the record. *Cf. Torres v. State*, No. 01-95-00862-CR, 2000 WL 1877641, at *1 (Tex. App.—Houston [1st Dist.] Dec. 28, 2000, pet. ref'd) (not designated for publication). We sustained appellant's second issue in part. We issued an order in which we abated the appeal and remanded the case to the trial court to conduct a hearing on appellant's motion for new trial regarding appellant's contention that he was denied effective assistance of counsel during the punishment phase of the trial.

## B.    Post-Abatement

The trial court conducted a hearing and concluded that appellant met his burden of proving that he received ineffective assistance of counsel during the punishment phase of the trial. On January 12, 2015, the trial court signed detailed findings of fact and conclusions of law, and recommended that appellant's motion for new trial be granted and that appellant receive a new punishment hearing. In its findings of fact, the trial court stated as follows.

- "[T]rial counsel did not investigate any of the relevant and crucial mitigating evidence that [appellant]'s MHMRA records could have provided."

- Appellant had received treatment at MHMRA beginning in 2003.

- "[H]ad [trial counsel] requested [appellant]'s MHMRA records, which he could have learned about by asking [appellant] why he was taking Risperdal, Paxil, and Trazodone, or by asking any of the witnesses who attempted to contact [trial counsel], . . . [trial counsel] would have discovered a wealth of relevant mitigating information."

23

- Had trial counsel "contacted any of the above character witnesses, each would have been willing and available to testify as to" appellant's mental health history, the effect that his mother's drug-abusing and partying lifestyle had on his upbringing, the effect that the death of his great-great-aunt had on his life, the effect of the brutal murder of his sister had on his life, his general reputation for being helpful and respectful to the elderly, and his general reputation for being a good and caring father.

- Trial counsel failed to present any mitigating evidence during appellant's trial.

- Trial counsel never mentioned appellant's "troubled childhood, his mental health history, or his general character for being respectful to the elderly and being trustworthy with children during his trial, all of which the Court deems as relevant evidence."

In its conclusions of law, the trial court stated as follows.

- Because "there was no investigation done [by trial counsel] into any potential mitigation evidence," trial counsel cannot rely on "trial strategy" as a reason for not presenting mitigation evidence during trial; without conducting any investigation, trial counsel "could not possibly make a strategic decision about what information, if any, to present at the punishment phase of" appellant's trial.

- Regardless of the potential punishment, the sentencing stage of any case is "the time at which for many defendants the most important services of the entire proceeding can be performed."

- When the potential punishment is life imprisonment, as in this case,

24

the sentencing proceeding takes on added importance.

- Trial counsel's lack of investigation and lack of presentation of "evidence of mitigating factors to balance against the aggravating factors presented by the State, despite the fact that several potential mitigation witnesses contacted [trial counsel] directly," prejudiced appellant at trial because "[t]hese character witnesses would have 'provided some counterweight to evidence of bad character.'"

- Appellant established by a preponderance of the evidence that witnesses, who could have presented mitigating evidence at punishment, were neither contacted nor interviewed by trial counsel, and "no character or mitigating witnesses were called during the punishment phase of trial."

- Appellant established by a preponderance of the evidence that trial counsel did not present any evidence of appellant's "documented and long standing mental health issues, which were easily discoverable, during the punishment phase of trial."

- Appellant established by a preponderance of the evidence that trial counsel never visited appellant in jail to inquire about any potential mitigating evidence.

- Omission of mitigating evidence during the punishment phase of the trial "creates a lack of an adversarial process that should be afforded to every [d]efendant."

- It is unreasonable in a case, in which a defendant is facing life imprisonment, not to present any mitigating evidence "or evidence to support the [d]efendant's redeeming qualities during the punishment

phase at trial, especially when the [S]tate has offered a plethora of evidence to the contrary."

- Appellant "met his burden in showing that counsel failed to investigate mitigating evidence and, but for counsel's failure, there is a reasonable probability that the punishment in his case would have been significantly less harsh, thus the [appell]ant was prejudiced by the failure of defense counsel to investigate or introduce the mitigating evidence during the punishment phase of trial; this Court recommends relief."

Following abatement and the signing of findings and conclusions, the State has not challenged on appeal the trial court's determination that a new trial is warranted as to appellant's punishment. Based on the trial court's findings and conclusions, we reverse the portion of the trial court's judgment assessing appellant's punishment, and we remand the case to the trial court for a new punishment hearing.

## Conclusion

We affirm the trial court's judgment as to appellant's conviction; we reverse the trial court's judgment as to appellant's punishment, and we remand the case to the trial court for a new punishment hearing.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Busby and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

26